**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SANDRA N. STAMEY, 1241319,** § | | |
| Petitioner, § | | |
| § | | |
| V. § | NO. 3:07-CV-1763-M | |
| § | ECF | |
| **NATHANIEL QUARTERMAN, Director** § | | |
| **Texas Department of Criminal Justice,** § | | |
| **Correctional Institutions Division** § | | |
| Respondent. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

On May 21, 2004, Petitioner was convicted of injury to an elderly person and was sentenced to eighteen years confinement. *State of Texas v. Sandra Null Stamey* , No. F-0400230-KH (Crim. Dist. Ct. No. 1, Dallas County, Tex., May 21, 2004). On November 18, 2005, the Fifth District Court of Appeals affirmed the conviction. *Stamey v. State*, No. 05-04-01825-CR (Tex. App. – Dallas, Nov. 18, 2005, pet. ref'd). On April 5, 2006, the Court of Criminal Appeals refused Petitioner's petition for discretionary review. *In re Stamey*, PDR No. 1933-05.

On January 27, 2007, Petitioner filed a state petition for writ of habeas corpus. *Ex parte*

*Stamey*, Application No. 67,865-01.  On July 11, 2007, the Court of Appeals denied the petition without written order on the findings of the trial court.  *Id*. at cover.

On October 14, 2007, Petitioner filed this petition.  She argues:

(1)   She is actually innocent; and

(2)   She received ineffective assistance of counsel because counsel failed to object when the court allowed the indictment to be amended and counsel failed to explain to her the reason for the amendment.

On March 10, 2008, Respondent filed his answer.  Petitioner did not file a traverse.  The Court finds the petition should be denied.

## II.  Factual Background

Petitioner first met Thomas Stamey when she was an aide at the personal care home where Stamey and his wife lived.  (Trial Tr. Vol. 2 at 8).  Stamey, his wife, and Petitioner later moved into an apartment and then into a house, where Petitioner was the Stameys' sole care provider.  (*Id*. at 10-12).  Stamey's wife died in June, 2000.  Six weeks later, Petitioner married the eighty-one-year-old Stamey.  (*Id*. at 12, 15).  The marriage occurred just days before a court was to appoint Stamey's son as his financial guardian.  (*Id*. at 15, 65).

Stamey's daughter testified that when she went to visit her father in September and November, 2000, he appeared dirty, he smelled of feces and urine, and he appeared malnourished.  (*Id*. at 17, 20).  She also testified her father lost a tremendous amount of weight between September, 2000, and when he was admitted to the hospital in January, 2001.  (*Id.* at 28-29).  Stamey's son testified that when he visited his father in September 2000, he smelled of urine, and that his father lost a considerable amount of weight between September 2000, and

December, 2000.  (*Id*. at 67-68).  When he saw his father in January 2001, his father was "in pretty bad shape" having lost even more weight and with bed sores all over his left leg.  *Id*.

Anike Awoniyi, an aide at Zale Lipshy Home Care, testified that she reported Stamey's poor condition to her supervisor.  (*Id*. at 88).  Raynette Slater, the director of home care at Zale Lipshy Home Health, testified that when she visited Stamey he and his bed were dirty due to Stamey's incontinence.  (*Id*. at 92).  She also testified that Petitioner was informed about nursing care facilities, and that she was instructed on how to care for Stamey so as to prevent bed sores.  (*Id*. at 111-12).

Dr. Sheffield, a physician at Methodist Hospital, testified that when Stamey was first admitted to the hospital in December of 2000, he had an infection, appeared to be malnourished, had a stage two bed sore on his back, and had some small abrasions or lacerations on his legs.  (*Id*. at 115).  When Stamey returned to the hospital on January 12, 2001, he was dehydrated, appeared to be in a state of fairly severe malnutrition, and had developed deeper wounds on his legs.  (*Id*. at 116-22).  By February 2001, Stamey's bed sores had worsened to stage four and, as a result, Stamey's leg was amputated.  (*Id*. at 126).  Dr. Sheffield further testified that the rapid progression of Stamey's condition raised grave concerns for his care, and that Stamey was not properly cleaned for clinic or home health visits, he was not properly hydrated, and he did not receive adequate nutrition under Petitioner's care.  (*Id*. at 126-28).

Petitioner testified that she moved into an apartment with Stamey and his wife and that she assisted him with his meals, baths and medications.  (Trial Tr. Vol. 3 at 12-13).  She stated that Stamey and his wife fought with their son and daughter.  (*Id*. at 15).  She testified that she, Stamey and his wife later moved to a house that Stamey and his wife bought.  (*Id*. at 16).  She

stated the Stameys also bought a car for her. (*Id*. at 17). She testified that after his wife died, Stamey asked her to marry him. (*Id*. at 20). She stated that after their marriage, Stamey's health improved. (*Id*. at 21). She testified that she tried to feed Stamey, but he often would not eat. (*Id*. at 27). She also stated that she bathed him regularly. (*Id*. at 28).

The Court found Petitioner guilty and sentenced her to eighteen years confinement.

### III.  Discussion

### 1.  Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh*, 521 U.S. at 336. The petition in this case is subject to review under the AEDPA.

**2.     Actual Innocence**

Petitioner claims she is actually innocent of the charge. She states she has new evidence showing that she took Stamey to his doctor appointments and that she took good care of him. A claim of actual innocence independent of constitutional infirmity at trial is not cognizable on habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1988). In this case, Petitioner attempts to bring a free-standing claim of actual innocence. This claim is not cognizable and should be denied.

Additionally, Petitioner offers only her conclusory allegations regarding this new evidence. She does not attach any evidence to her petition, and she did not file a traverse. Petitioner's claim should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

**3.     Procedural Bar**

Petitioner claims her trial counsel was ineffective because he failed to object when the court allowed the indictment to be amended and when counsel failed to explain to her why the indictment was amended. Respondent argues this claim is procedurally barred because Petitioner did not raise the claim on state review.

A federal court will ordinarily not review a claim where a petitioner has not presented her claim to the highest court of the state and the state court to which she would be required to present his claims would now find the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991).

The record reflects that Petitioner failed to raise this claim in state court. In her state habeas petition, she argued that her counsel was ineffective because he proceeded to trial without an amended indictment. This claim is different than the claim she raises in her federal petition. Accordingly, the Texas Court of Criminal Appeals has not reviewed the claim. The claim cannot be reviewed by a state court because it is too late to file a petition for discretionary review. If this Court were to require Petitioner to return to state court to exhaust this claim, it would be subject to dismissal.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Petitioner has not shown sufficient cause for her failure to present this claim to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations

with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup*, 513 U.S. at 327). Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted her. Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on Petitioner's ineffective assistance of counsel claim.

**4. Summary**

Petitioner is lawfully restrained because she has failed to prove that she has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 9th day of June, 2009.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**<u>NOTICE OF RIGHT TO OBJECT</u>**

The United States District Clerk shall serve a copy of these findings and recommendations on the parties.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings and recommendations to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).